UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARRY VANWECHEL, et al.,

    Plaintiffs,

v.                                                        CASE NO. 8:17-cv-738-T-23AAS

REGIONS BANK, et al.,

    Defendants.
_____/

## **ORDER**

      The Vanwechels borrowed money from Regions Bank and purportedly defaulted on the loan.  After attempting unsuccessfully to collect the debt, Regions hired Focus Receivables Management to collect.  (Doc. 2 at 2)  The Vanwechels sue (Doc. 2) Regions and Focus Receivables for violating the Florida Consumer Collection Practices Act and the Telephone Consumer Protection Act.  Also, the Vanwechels sue Focus Receivables for violating the Fair Debt Collection Practices Act.  Regions moves (Doc. 5) to compel arbitration of the claims against both defendants, and Focus Receivables joins (Doc. 6) the motion.

## **DISCUSSION**

      If a valid and written agreement requires arbitration and if a party moves to compel arbitration, Section 4 of the Federal Arbitration Act requires that an order

direct the parties to arbitrate. In this action, Florida law governs the validity of the agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–32 (2009) (explaining that "state contract law" governs the validity of an arbitration agreement). Under Florida law, a contract requires an offer, acceptance, and consideration. *Med-Star Cent., Inc. v. Psychiatric Hosp. of Hernando Cty., Inc.*, 639 So. 2d 636, 637 (Fla. 5th DCA 1994) (Thompson, J.). In a 2006 written agreement, the Vanwechels received a $75,000 credit line from AmSouth Bank (Doc. 5-1 at 15), which Regions acquired (Doc. 5-1 at 3). In a 2007 written agreement, Regions increased the credit line to $100,000. (Doc. 5-1 at 7) The Vanwechels agreed in the 2006 contract and again in the 2007 contract that:

> Except as expressly provided below, any controversy, claim, dispute or disagreement arising out of, in connection with or relating to . . . (4) the collection of any amounts due under this Agreement, (5) any alleged tort or other claim arising out of or relating in any way to this Agreement . . . will be settled by binding arbitration.

(Doc. 5-1 at 11) The Vanwechels argue that the agreement "lacks mutuality," that is, that insufficient consideration supports the arbitration agreement. (Doc. 10 at 16) But Regions promised to arbitrate a claim against the Vanwechels in exchange for the Vanwechels' promise to arbitrate a claim against Regions. The mutual promises to arbitrate a dispute constitute sufficient consideration. *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355–56 (Fla. 2d DCA 2005) (Whatley, J.). Even if the contract imposes on only one party the obligation to submit to arbitration, an arbitration

- 2 -

clause warrants enforcement if consideration supports the balance of the contract. *Avid Eng'g, Inc., v. Orlando Marketplace Ltd.*, 809 So. 2d 1, 4 (Fla. 5th DCA 2001) (Pleus, J.) ("Because there was sufficient consideration to support the entire contract, the arbitration provision was not void for lack of mutuality of obligation."). Regions's promise to lend the Vanwechels money constitutes sufficient consideration for the Vanwechels' promise to repay the loan and interest.

The Vanwechels deny the applicability of the arbitration agreement and argue that the claims "are separate and independent from" the agreement. (Doc. 10 at 3–7) But the Vanwechels agreed to arbitrate "any" claim "relating to" "the collection of any amounts due under" the agreement. Because the Vanwechels' TCPA, FCCPA, and FDCPA claims "relate" directly to the collection of money owed under the agreement (the defendants allegedly violated the TCPA, FCCPA, and FDCPA while attempting to collect the debt owed to Regions), the agreement requires the arbitration of the Vanwechels' claims.

Also, the Vanwechels argue that the arbitration agreement is "unconscionable" and that "absurd results will ensue from enforcing" the agreement. (Doc. 10 at 8) Under Florida law, a clause is unconscionable if a party lacked a choice whether to include the clause and the contract appears so "outrageously unfair as to shock the judicial conscience." *Gainesville Health Care Center, Inc. v. Weston*, 857 So. 2d 278, 284–85 (Fla. 1st DCA 2003) (Webster, J.) (internal citations and quotation omitted).

The Vanwechels fail to proffer evidence that they lacked a choice whether to include the arbitration clause. In either event, the arbitration agreement triggers no "shock [to] the judicial conscience." *Belcher v. Kier*, 558 So. 2d 1039, 1043 (Fla. 2d DCA 1990) (per curiam) (explaining "substantive" unconscionability). On the contrary, an arbitration agreement sensibly decreases the cost and the duration of a dispute. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).

Additionally, the Vanwechels argue that the arbitration agreement contains an "alternative jurisdiction provision" that permits litigating in the Middle District of Florida. The agreement permits "fil[ing] an action in small claims court" as an alternative to arbitration. (Doc. 5-1 at 12) The Vanwechels sued in the Circuit Court of Pasco County (Doc. 1), and Regions removed (Doc. 2) the action. According to the Vanwechels, the defendants' removal of this action from "small claims court" unfairly prevents the Vanwechels from invoking the "alternative jurisdiction provision." (Doc. 10 at 13) The Vanwechels' argument fails for two reasons. First, no "small claims court" exists in Florida. *LaSalla v. Pools by Georgia of Pinellas Cty, Inc.*, 125 So. 3d 1016, 1017 (Fla. 2d DCA 2013) (Altenbernd, J.) (explaining that the Florida Small Claims Rules "do not create a 'small claims court.' They simply create rules of procedure for use in county court when the amount in controversy is small."). Second, even if a county court constitutes a "small claims court," the Vanwechels sued in circuit court, not county court. Because the Vanwechels failed to

sue in "small claims court," the Vanwechels cannot invoke the "alternative jurisdiction provision" to avoid arbitration.

Also, the Vanwechels argue that the defendants waived the right to compel arbitration by removing the action. (Doc. 10 at 13 ("If Defendants truly intended on asserting the arbitration clause in the Credit Agreement as a defense, then Defendants were required to bring that claim in [circuit court].") A defendant waives the right to compel arbitration if the defendant acts inconsistently with the right to compel arbitration and if the defendant's conduct prejudices the plaintiff (for example, by requiring the plaintiff to expend money litigating in state or federal court). *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002). In *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542 (11th Cir. 1990), the defendant waived the right to compel arbitration by engaging in discovery for several years and waiting more than twenty months to request arbitration. In contrast, the defendants in this action promptly removed the action, moved within a week of removal to compel arbitration, and submitted no other motion. The removal establishes no waiver of the right to compel arbitration. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) (Bauer, J.) ("Absent any other action, removal alone did not amount to implicit waiver of [the] right to arbitrate.").

Finally, the Vanwechels argue that Focus Receivables, not a signatory to the Vanwechel-Regions agreement, cannot invoke the agreement to compel arbitration of

the claims against Focus Receivables. Although a person not party to an agreement generally cannot enforce the agreement, several exceptions permit enforcement of an arbitration agreement by a non-party. *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1168 ("[A] nonparty to a contract may have the legal right to enforce [the contract's] provisions 'through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel.'") (quoting *Arthur Anderson*, 556 U.S. at 631).

The defendants correctly argue that "equitable estoppel" requires arbitration of the claims against Focus Receivables. (Doc. 5 at 10) If a plaintiff's claims against a contracting party and a non-party involve "substantially interdependent and concerted misconduct," equity requires arbitrating the claims against both the contracting party and the non-party. *Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 969 (Fla. 3d DCA 2010) (Lagoa, J.) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *Lash & Goldberg LLP v. Clarke*, 88 So. 3d 426, 427–28 (Fla. 4th DCA 2012) (Gross, J.). The Vanwechels allege that Focus Receivables, as the "servant, employee, and/or other representative of Regions," violated the TCPA, the FDCPA, and the FCCPA while attempting to collect the debt owed to Regions. (Doc. 2 at ¶¶ 12–14, 35–38, 51, 58, 63, 67, 74) Because the Vanwechels allege a concerted effort by the defendants to collect the debt purportedly owed to Regions, equity permits Focus Receivables to enforce the arbitration agreement.

## CONCLUSION

The motions (Docs. 5, 6) to compel arbitration are **GRANTED**, and the action is **STAYED**. No later than ten days after announcement of the arbitral decision, the parties must move to confirm or vacate the award or to dismiss this action. The clerk is directed to **ADMINISTRATIVELY CLOSE** the case.

ORDERED in Tampa, Florida, on May 3, 2017.

*/s/ Steven D. Merryday*
_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE